## THE STATE v. FRY ET AL.

1. **Criminal Evidence:** ASSAULT: ILL FEELINGS ON PART OF DE-FENDANTS. In cases of assault it is always competent to show previous ill feeling, bad blood, or threats, as tending to show a probable motive for the commission of the crime. And where the assault was made upon a son, and the defendants were indicted jointly therefor, evidence of threats made by one of them against the father and his family was properly admitted.

2. **Criminal Law:** TIME NOT ESSENTIAL: INSTRUCTION. Where time was not essential in an indictment, it was not error to instruct the jury that they must find that the crime was committed at about the time charged, or at any time within three years prior to the finding of the indictment;—that being the time prescribed by the statute of limitations for the crime in question.

3. ———: ALIBI: BURDEN OF PROOF: INSTRUCTION. An instruction to the effect that defendants had the burden of proof to establish an *alibi*, but that they need not establish it beyond a reasonable doubt, but that if, upon the whole case, the testimony raised a reasonable doubt as to the defendants' presence at the time and place where the assault was committed, that, of course, would create a reasonable doubt as to their guilt, and would entitle them to an acquittal, *held* as favorable to defendants as they could demand. See cases cited in opinion.

4. ———: REASONABLE DOUBT: INSTRUCTIONS. Where the ordinary and oft-approved instructions concerning reasonable doubt have been given to the jury, it is not necessary, though requested by defendants, to advise each juror that he is to act on his own convictions, and not concur in a verdict which is against his judgment.

*Appeal from Kossuth District Court.*

THURSDAY, DECEMBER 10.

THE defendants were tried and convicted upon an indictment for an assault with intent to maim, and they appeal.

*Parsons, Perry & Sherman,* for appellants.

*A. J. Baker, Attorney-general,* for the State.

ROTHROCK, J.—I. The principal ground relied upon by the defense for a reversal of the judgment is that the verdict

is not supported by the evidence. Robert M. Walker, the prosecuting witness, was, at the time of the alleged injury, about seventeen years of age. He testified that on Sunday, the seventeenth day of September, 1882, he was on the open prairie in Kossuth county herding cattle, and that, while so employed, the defendants came to him, threw him on the ground, unbuttoned his pants, and cut·his *scrotum* so that one of his testicles passed through the opening made by the cutting. He testified that this occurred at ten or eleven o'clock in the forenoon; that the defendants wore masks upon their faces; that the only conversation between him and the defendants consisted of Herrick asking him if he was herding, and how many cattle he had in the herd. Walker was acquainted with both of the defendants, and claimed upon the trial that he was able to identify them as the guilty parties. There is no dispute about the injury, and that it was of a very serious character. Walker was the only witness who identified the defendants as the guilty parties. Both of the defendants testified as witnesses on the trial, and denied that they were guilty; and several members of their respective families, as well as themselves, stated that they were not away from their homes on the seventeenth day of September, 1882, except at such time in the day as. that they could not have committed the crime. On the other hand, it was shown that the father of Walker had previously had some difficulties with the defendants, and that there was ill feeling by defendants towards him and his family. Walker in his cross-examination stated that he told the grand jury that he was not positive who the men were who assaulted and injured him. It appears in evidence that the defendant Fry lived about one-half mile from the place where Walker claims he was injured, and Herrick lived in the same neighborhood. There was evidence tending to show that the defendants were men of good character, and also evidence to the contrary. There are other circumstances disclosed in evidence, but the foregoing are the leading and prominent facts in the case. We

are not prepared to say that the district court should have set aside the verdict as not supported by the evidence. All of the witnesses who testified for the defendants in support of an *alibi* may have been truthful, and the defendants may nevertheless be guilty. Absence from their homes for a very brief period would enable them to commit the crime, and this might well occur without the observation of other members of their families, and, although their faces were masked, Walker might well recognize them by the tone of their voices, their size, their gait when walking, and by other means.

II. It is claimed that the evidence of Peter J. Walker, the father of the prosecuting witness, as to the threats of the

1. CRIMINAL evidence; assault: ill feelings on part of defendants.

defendants, should have been excluded as incompetent. We think otherwise. In such cases it is always competent to show previous ill feeling, bad blood, or threats, as tending to show a probable motive for the commission of the crime; and threats or ill feeling towards the father of children to injure him and his family would surely be competent evidence on a criminal charge for an injury to one of the children. The fact that these difficulties with the defendants were about distinct matters as to each of the defendants did not render the evidence incompetent. The defendants were tried jointly, and evidence against either was competent.

III. It is further claimed that the court erred in permitting the state, in rebuttal, to introduce evidence as to threats by one of the defendants. The order in which evidence is introduced to the jury is, within certain limits, discretionary with the court. If the court had refused to allow the defendants to introduce counter-evidence, there might be some ground for holding that there was an abuse of discretion. The record does not show that there was any such refusal.

IV. In the second paragraph of the charge to the jury the court instructed them that they must find that the crime

2. CRIMINAL law: statute of limitations: instruction.

was committed on or about the time charged, or at any date within three years prior to the find-

ing of the indictment. It is claimed that this part of the charge is erroneous. It is the formula usually employed by the district courts in this state when time is not essential; and a conviction may be had if it be shown that the crime was committed at any time within the statute of limitations.

V. In instructing the jury upon the question of *alibi*, the court used this language: "No. 13. In addition to other evidence introduced by the defendants, they have produced testimony to show what in law is known as an *alibi*, which is simply the fact that,

3. ———: alibi: burden of proof: instruction.

at the time the crime with which they are charged was being committed, they were at another and different place from that where the transaction took place. The burden of establishing an *alibi* is cast upon the defendants, and the evidence introduced to sustain it should outweigh the proof introduced by the state tending to show that the defendants participated in the crime. They are not bound to establish such defense beyond a reasonable doubt; but if, upon the whole case, the testimony raises in your minds a reasonable doubt that the defendants were present at the place where the assault was committed, that of course, would create a reasonable doubt as to their guilt, and would entitle them to an acquittal." This instruction is complained of by defendants. It is fully as favorable to the defendants as they had any right to demand. See *State v. Bruce*, 48 Iowa, 530; *State v. Hamilton*, 57 Id., 596; *State v. Reed*, 62 Id., 40; *State v. Hemrick*, Id., 414.

VI. Lastly, it is urged that the court erred in refusing to charge the jury, at the request of the defendants, as follows: "You are told by the court that each juror, under his oath, must vote according to his own conviction, and the doubt with which he

4. ———: reasonable doubt: instructions.

has to do is the doubt in his own mind; and, if a reasonable doubt arises in his mind, or fails to arise, he should vote accordingly." The instructions given by the court to the jury on the question of reasonable doubt are in the usual form, which this court has time and again approved, and we

think they were sufficient. It is not necessary that each juror should be advised that he is to act upon his own convictions, nor to caution him that he should not concur in a verdict which is against his judgment.

AFFIRMED.