# CHARLESTON.

STATE *v*. WILFRED DAVIS.

Submitted, September 9, 1902. Decided December 6, 1902.

1. HOMICIDE—*Degree of Crime—Intoxicated Person.*

A person guilty of homicide may reduce his crime from murder in the first degree to murder in the second, by showing that he was so intoxicated at the time the offense was committed as to render him incapable of doing a willful, deliberate and premeditated act, and that he did not voluntarily become intoxicated for the purpose of committing the offense. All this may be shown by his own and the State's evidence, and the facts and circumstances surrounding the case. (p. 226).

2. ERROR—*Instructions.*

It is not error to refuse instructions not justified by the evidence. (p. 225).

3. CRIMINAL LAW.

Where there is no evidence tending to show that the accused had reasonable grounds to believe that the deceased intended to commit murder or felony or to do the accused great

bodily harm. it is not error for the court to refuse to instruct the jury that "the accused would be excusable for firing at the deceased if he had reason to believe and did believe that it was necessary to do so to preserve his own safety." (p. 227).

Appeal from Circuit Court, Randolph County.

Wilfred Davis was convicted of murder in the first degree, and brings error.

*Affirmed.*

C. H. SCOTT, for plaintiff in error.

The ATTORNEY GENERAL, for the State.

DENT, PRESIDENT:

Wilfred Davis, convicted of murder in the first degree by the circuit court of Randolph County for killing the chief of police of the town of Elkins, assigns the following errors why the judgment of the circuit court should be reversed:

*First:* Because the following instruction was given on behalf of the State: "The court further instructs the jury that a man is presumed to intend what he does, or which is the immediate or necessary consequence of his act; and, if the prisoner, with a deadly weapon in his possession, without any, or upon very slight provocation, gives to another a mortal wound, the prisoner is *prima facia* guilty of wilful, deliberate and premeditated killing, and the necessity rests upon him of showing extenuating circumstances, and unless he proves such extenuating circumstances, or the circumstances appear from the case made by the State, he is guilty of murder in the first degree."

The only objection to this instruction is that it does not take into consideration the alleged drunken condition of the accused at the time the offense was committed. The claim is advanced that it was the duty of the State to show that the accused was "of sound mind, memory and discretion." The burden of showing want of "sound mind, memory and discretion," as an excuse for homicide to the satisfaction of the jury is on the accused, which he may do by all the evidence and the facts and circumstances surrounding the case. *State* v. *Jones,* 20 W. Va. 764; *State* v. *Robinson, Id.* 743; *State* v. *Cain, Id.*

679. This instruction places the burden where it belongs. Intoxication is included in the words "extenuating circumstances." It properly propounds the law, as applicable to the case, and it was not error to give it.

*Second:* For refusing the following instruction, to-wit: "The court instructs the jury that, although they may believe from the evidence that the accused has been guilty of an infraction of the law of the town of Elkins by firing a gun on the highway, and, although they may further believe that the deceased was chief of police of said town, still the accused could not have been legally arrested and placed in jail for such an offense unless the jury still further believe from the evidence that such offense had been committed in the presence of said officer, or unless said officer had a warrant of arrest properly issued upon complaint, commanding such arrest to be made." This instruction does not fit the case. According to the defense the accused was publicly intoxicated, and he was carrying a revolver contrary to law, as shown by the fact that he used it to shoot the officer. Therefore the officer had a right to arrest him without a warrant. For two reasons he was subject to arrest on sight. No warrant was necessary. Nor would the fact that he was illegally arrested justify the killing of the officer. The instruction was only calculated to mislead the jury, and hence it was properly refused.

*Third:* For refusing the following instruction, to-wit: "The court further instructs the jury that if they believe from the evidence that at the time the fatal shot was fired the accused and the deceased were engaged in a struggle and the accused saw the deceased drawing from his pocket something bright which he believed to be a revolver with which the deceased was about to shoot him, then in that case the accused would be excusable for firing at the deceased, if he had reason to believe and did believe that it was necessary to do so to preserve his own safety." The instruction is bad because it fails to show the prisoner was without fault. The prisoner was resisting arrest, and was acting in an unlawful manner. The circumstances did not justify the accused in believing that the officer was going to do him any bodily harm, but they show plainly that the officer was doing nothing more than his duty required of him. If there was a struggle going on, it was entirely oc-

casioned by the unlawful conduct of the accused. If in a reasonable state of mind, he could not have possibly drawn the conclusion that the officer was about to shoot him, and that it was necessary to shoot the officer to preserve his own life, which is really the true import of the instruction asked. While we must view the matter from the standpoint of the accused, it must be done in a reasonable manner. There is not a particle of evidence to justify the accused in believing that the officer was going to shoot him other than that of the accused himself. Of course he might be so intoxicated as to be in an unreasonable state of mind, and imagine that the officer was about to execute him then and there. This instruction, however, does not present the question of intoxication, but it is framed on the theory that the accused was at the time in a reasonable state of mind. Being so, there was nothing in the conduct of the officer to lead him to believe that he was in danger of any more force from the officer than that made necessary by his own unlawful conduct. The accused testified that, "When he arrested me and started to the jail with me, when he got up to the jail I said I wouldn't go, and he said: 'I will show you if you don't go,' and he reached in his hand and pulled out something bright that I supposed to be a gun." "I suppose he was going to shoot me." This is a supposition that the evidence does not justify a reasonable mind in entertaining from the acts and conduct of the deceased. As it is said, "Apprehension of danger to justify a homicide ought to be based not alone on surmises but there ought to be coupled therewith some act on the part of the party, from whom danger was apprehended evidencing an immediate intention to carry into execution his threats or designs. *State* v. *Cain*, cited. There were no threats or designs on the part of the officer except that he would compel the accused to "go to the lockup," and that he reached in his pocket to take out something bright, being a pair of nippers to compel the accused to submit to arrest. There is nothing in the evidence, admitting his testimony to be true, justifying the alleged supposition of the accused that the officer was going to shoot, therfore he had no reasonable grounds to believe the officer was going to treat him unlawfully. Counsel recognizes this fact, but really on the alleged intoxication of the accused as blinding his mental faculties to such

an extent that he had unreasonable or imaginative grounds for his belief. As heretofore shown, this is not included in the instruction, nor does it justify it. It is founded on a reasonable and not an unreasonable belief, and therefore the court committed no error in refusing it.

*Fourth:* For refusing to set aside the verdict. The only pretense of justification for a wilful and deliberate killing of an offiver in the discharge of his duty is the alleged intoxication of the accused. That he was intoxicated to some extent, there can be no reasonable doubt. In *Robinson's Case,* 20 W. Va. 713, it is held that "A person who is intoxicated may yet be capable of deliberation and premeditation; and if the jury believe from all the evidence in the case that the prisoner wilfully, maliciously, deliberately and premeditatedly killed the deceased, they should find him guilty of murder in the first degree, although he was intoxicated at the time of the killing." This is the conclusion the jury appears to have arrived at in this case, and the court is powerless to disturb their verdict, for it is impossible to say that it is plainly contrary to the decided preponderance or weight of the evidence. Such intoxication may be a matter for executive clemency, but it is not for judicial consideration. The accused is a young man twenty-one years old, and his conduct on this occasion evinces unusual depravity for one of his age, either through neglect or heritage. The law of the land makes no excuse for either, but punishes every offense alike, whether occasioned by inherited or acquired depravity not amounting to legal insanity. Such law may be unjust and society which permits conditions to exist that pander to men's vices and make them wicked, depraved and criminal, may not be wholly free from blame, yet this Court, the tribunal thereof and created thereby, can do nothing but enforce the law as it exists, and leave the final adjustment of such matters to that Supreme Tribunal whose unerring judgments free from human frailties rest upon the truth primordial and wisdom unfallible.

The judgment is affirmed.

*Affirmed.*

BRANNON AND POFFENBARGER, JUDGES, (*concurring*):

I do not think that the instruction on self defence is good,

or could be made good under the conceded facts. It does not put to the jury as an element the question whether Davis was without fault in bringing the necessity upon himself. One who brings upon himself the necessity of killing is denied the plea of self defence. Under this instruction he might have been held guiltless of any degree of offense. Killing in resistance of a lawful arrest cannot be justifiable upon the ground of self defence. The instruction does not in other respects fill the standard of self defence. If even the evidence would justify a proper instruction on self defence, there is no error because this instruction is bad. JUDGE POFFENBARGER concurs in this note.