# CHARLESTON

## STATE v. DILLARD.

Submitted February 20, 1906.    Decided March 6, 1906.

1.  HOMICIDE—*Self-Defense—Burden of Proof.*
    Upon a trial for murder, where the killing is admitted, and the defendant relies upon self-defense, the burden is upon him to establish such defense to the satisfaction of the jury. (p. 199.)

2.  SAME.
    Where, upon a trial for murder, the evidence introduced by the state to establish the homicide, tends to show extenuating circumstances, this does not relieve the defendant of the burden of establishing self-defense, if it is relied on, to the satisfaction of the jury; but the circumstances so shown are proper to be considered by the jury in arriving at their verdict. (p. 199.)

3.  SAME—*Intoxication as Defense.*
    Upon a trial for murder, it is not error to refuse to instruct the jury that if they believe the prisoner, at the time of the killing,

was so intoxicated as to be incapable of deliberation and premeditation, he should not be found guilty of murder in the first degree, where there is evidence tending to show that the defendant had previously designed the killing, and became voluntarily intoxicated for the purpose of committing the offense. The instruction should also present this theory to the jury. (p. 200.)

4. CRIMINAL LAW—*Instructions.*

Where the jury are instructed upon the law relating to a particular subject, it is not error to refuse to give other instructions to the same effect, as the court need not repeat instructions already substantially given. (p. 202.)

5. HOMICIDE—*Appeal—Review.*

It is peculiarly within the province of the jury to weigh the evidence upon the question of self defense, and the verdict of a jury adverse to that defense will not be set aside unless it is manifestly against the weight of the evidence. (p. 204.)

Error to Circuit Court, Mercer County.

Lewis Dillard was convicted of murder and brings error.
*Affirmed.*

A. M. SUTTON, for plaintiff in error.

C. W. MAY, Attorney-General, for the State.

SANDERS, JUDGE:

This is a writ of error to a judgment of the criminal court of Mercer county, convicting the defendant, and sentencing him to the penitentiary for the term of ten years, for the murder ot Bob Banner.

The prisoner, upon his trial, asked the court to give to the jury eleven instructions, four of which were given, but the court refused to give instructions 5 to 11, which ruling of the court, in refusing said instructions, is assigned as error.

While the refusal of instruction No. 3 is assigned as error in the petition, still counsel for the defendant, in his brief, does not advance any reason in support of this assignment; in fact, it is not insisted that it was error to reject this instruction, and, inasmuch as it appears to have been properly refused, it will not be further referred to.

As instructions 6 and 8 present practically the same question, they will be dealt with collectively. The defendant admits the killing, and relies upon self defense to excuse him,

and these instructions present the theory that if there is a reasonable doubt as to whether or not the killing was done in self defense, the jury should acquit.　It has always been the law in this State, which has been reiterated time and time again, that where a homicide is proven and the prisoner relies upon self defense, the burden is upon him to establish such defense by a preponderance of the evidence.　There is no principle of criminal law better settled and more firmly intrenched than this, and to have given these instructions would have been a violation of this fundamental rule.　But, in justice to counsel for the defendant, it is proper to say that in his brief he admits the stability of this doctrine, but claims that it is inapplicable here; that it only applies where the homicide has been proven, and where nothing else appears from the evidence of the State, and that it has no application where the State, in proving the homicide, presents facts which negative malice, and which go to show that the act was justifiable.　We fail to appreciate the distinction undertaken to be drawn.　The fact that the State, in proving the homicide, shows facts from which it may be concluded that there is no malice, or that the killing was justifiable, cannot alter the rule that where self defense is relied upon, it must be established by a preponderance of the evidence.　But these facts introduced by the State in proving the *corpus delicti*, and which at the same time show, or tend to show, want of malice, or that the killing was in self defense, are to be considered in determining whether or not the evidence does preponderate in favor of self defense. When the homicide is shown or admitted, it is then for the jury to determine from all the facts, whether or not self-defense has been shown, and it is immaterial whether the evidence relied upon to show such defense is disclosed by the witnesses for the State or those for the defendant; for the jury, at last, must say, from all the evidence, whether or not such defense has been established by a preponderance of the testimony.　*State* v. *Cottrill*, 52 W. Va. 363; *State* v. *Johnson*, 49 W. Va. 684; *State* v. *Hatfield*, 48 W. Va. 561; *State* v. *Staley*, 45 W. Va. 792; *State* v. *Jones*, 20 W. Va. 764.

Instruction No. 7 tells the jury that the evidence that the defendant was reputed to be a peaceable and quiet citizen

is not to be lightly disregarded by them, and that the production of such evidence will be sufficient upon which to base a reasonable doubt as to the guilt of the accused. One fault we find in this instruction is that it invades the province of the jury by telling them the weight which should be given to the evidence. They are told that the evidence is not to be lightly disregarded. As to how the evidence should be regarded, and what weight it should have, should be left entirely with the jury, to be by them taken and considered in connection with all other facts and circumstances of the case. Then it assumes that the good character of the defendant has been shown, and states that the mere fact one accused of crime produces evidence of good character may be sufficient evidence on which to base a reasonable doubt as to his guilt. A court should not invade the province of the jury by telling them what weight should be given to the evidence. It is the duty of the jury to consider such evidence in connection with all the other evidence and circumstances of the case, and to give it just such bearing and weight as it should have. It is peculiarly within their province to determine its true weight and credibility. To have given this instruction would have been tantamount to telling the jury that the defendant had shown good character, and, therefore, it of itself is sufficient to create a reasonable doubt as to his guilt.

It is undertaken to be presented by instructions Nos. 9 and 10 that if the defendant, at the time of the killing, was in such condition from intoxication as to render him incapable of deliberation and premeditation, that he should not be found guilty of murder in the first degree. When there is evidence tending to show that one who is charged with murder was so intoxicated at the time of the killing as to render him incapable of deliberation and premeditation, he is entitled to an instruction presenting this theory to the jury. It is the law that where one is so intoxicated as to be incapable of deliberation and premeditation, he cannot be guilty of murder in the first degree. But this rule does not apply to one who has formed a wilful, deliberate and premeditated design to take the life of another, and, in pursuance of such design, voluntarily makes himself drunk for that purpose, and while in that condition accomplishes the act which he previously designed.

*State* v. *Robinson*, 20 W. Va. 713; *State* v. *Welch*, 36 W. Va. 690; *State* v. *Davis*, 52 W. Va. 224. The evidence of the State shows that just before the killing, the defendant had been drinking, and that just after the killing, he was very much intoxicated. He denies that he was intoxicated at all, and in his testimony does not rely upon the fact that he was incapable of deliberation or premeditation, but seeks to justify the act upon ground of self defense. This is a binding instruction. By it, the jury are told that if they believe from the evidence that the defendant, at the time of the killing, was so intoxicated as to render him incapable of deliberation and premeditation, that they should not find him guilty of murder in the first degree. This proposition would be correctly presented if there were no facts or circumstances showing that the defendant had previously designed to take the life of the deceased, and had voluntarily become drunk for that purpose, but where there is any evidence to show that he became intoxicated for this specific purpose, after having previously designed the killing, then such an instruction would not be proper without presenting this theory, also. In other words, this instruction practically says that under any and all circumstances, where one charged with murder is shown to have been, at the time of the killing, so intoxicated as to destroy his capacity for deliberation and premeditation, that a first degree verdict cannot be found, while it is only true if these facts, only, exist, and it does not appear that the defendant became drunk, voluntarily, for the purpose of committing the act. Then, is there any evidence which would call for this additional theory to be presented by this instruction? The facts are that an intense unfriendly feeling had, for some time, existed between the defendant and the deceased. That it was so bitter that each had frequently threatened to take the life of the other, and that on the day of the killing, the defendant, in company with another, went to the town of Pocahontas and procured whiskey, and, on his return, went to the home of the deceased and took his life. These facts are sufficient to call for the embodiment, in this instruction, of this additional provision. And, moreover, the refusal of this instruction, assuming that the defendant was entitled to it, is certainly not prejudicial error, because the verdict is for murder in the second degree, and the only pur-

pose of the instruction is to reduce the grade of the offense from murder in the first to murder in the second degree.

By instruction No. 11 it is attempted to define extenuating circumstances. This instruction tells the jury that extenuating circumstances, in order to reduce the degree of criminal guilt, as contemplated in law, are such circumstances as would lead a reasonable man, in self defense, to repel an attack by an enemy, or of entering into a combat under hot blood and provocation. This instruction was properly rejected. In the first place, it is clearly misleading, and, in the second place, it was completely covered by instruction No. 4, given for the defendant. The court, in that instruction, told the jury that if the defendant was attacked by another in such manner as to place him in danger of his life or great bodily harm, and that he believed, and had good reason to believe that he was in danger of death or great bodily harm by reason of such attack, that he had a right, under the law, in repelling such attack, to use such force as was necessary, even to the taking of life.

The defendant also assigns as error that the court gave five instructions for the State, but in argument there is no objection pointed out to instructions 1 and 2, which, we think, were clearly proper, and the objection to 4 and 5 is that the burden of proof never shifted to the defendant, and that the presumption of malice was negatived by the State's own evidence, or, at least, that it left the question of maliciousness and criminal intent uncertain. What was said in reference to instructions 6 and 8, offered by the defendant, and refused, is a sufficient answer to the objection pointed out to these instructions.

Instruction No. 3 is complained of, because it is merely an abstract definition of a reasonable doubt, and is not limited to the case. This instruction tells the jury that a reasonable doubt is not a mere vague or fanciful doubt, but that it is one for which a reason can be given, and that if they doubt as men, they should doubt as jurors, and that if they do not doubt as men, they should not doubt as jurors. This instruction is not subject to the criticism advanced. It seems to present to the jury a proper definition of a reasonable doubt. This the State was entitled to ask, and the jury to have, at the hands of the court. An instruction of practically

the same import was held good in State v. Kellison, 56 W. Va. 697.

Complaint is made that the court, over the objection of the defendant, permitted the witness, J. H. Mitchell, to testify that the deceased, on the morning of the day he was killed, told him that he had been injured in the mines, and would go home and not return to work that day. This evidence was not material, but, at the same time, it could not have in the slightest affected the finding of the jury. And, then, again, the fact that he was injured that morning, and was not working that afternoon, on account of the injury, was proved by Mary Coleman, a witness for the State, and the fact that Banner said he was hurt and would not work was simply a reiteration of that fact, and that he was hurt is not controverted or attempted to be discounted.

It is claimed that the court should have allowed Dr. J. P. McNutt to testify as to the seriousness of the wound given by the officer, Huff, to the defendant when he was arrested, to show the feeling or prejudice of the officer, who was introduced as a witness. We cannot see how the seriousness of the wound would tend to show the feeling of the witness toward the defendant. The fact that the officer shot him twice, is in evidence. If the purpose of this testimony is to show that Huff entertained a hostile feeling toward the defendant, and if it could be used for this purpose, the fact of the shooting would be that which would demonstrate it, and not the seriousness of the wound. This evidence was properly rejected. And, even though this evidence was admissible on the ground that the defendant had the right to show it for the purpose of establishing the fact that the officer entertained an ill feeling toward him, yet its rejection could not be prejudicial to him, because the evidence of the officer has no bearing on the case. He only states that he was summoned to assist in arresting the defendant; that he went to Simmons; found the defendant in some weeds, and that he was lying down on his right side, with his feet toward the officer, and with his pistol pointed toward him. This evidence could, in no possible way, have any bearing upon the question at issue.

As the case now stands, we have only to inquire whether

the verdict is supported by the evidence, as the refusal of the trial court to set it aside is assigned as error. This was peculiarly a jury question, they being the triers of the facts and invested with the power to weigh the evidence, and test the credibility of witnesses. *State* v. *Newman*, 49 W. Va. 724. They have the right to believe or disbelieve witnesses, and, possessing this power, and having found a verdict against the defendant, which was approved by the trial court, it will not be disturbed, unless it be very plain that it is erroneous. The killing is admitted, and the defendant relies upon self defense to excuse him. He presented this theory of his case to the jury, which was discredited by them, after having heard all the evidence, and having seen the witnesses. They listened to the defendant's version of the affair, and having found against him, this Court cannot, under the well settled legal rules, disturb their finding. We not only conclude that the verdict cannot be set aside, because of a lack of sufficient evidence to support it, but are constrained to view it as eminently just; and the judgment of the criminal court is, therefore, affirmed.

*Affirmed.*